UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS HOUSING AUTHORITY ex rel. JAMISON ELECTRIC, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:12CV1746 CDP ) |
| HANKINS CONSTRUCTION CO., and FIDELITY AND DEPOSIT CO. OF MARYLAND, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This action is before me on defendant Hankins Construction Co.'s motion for partial summary judgment. Hankins seeks summary judgment on a single issue: whether the contract between it and plaintiff-subcontractor Jamison Electric, LLC, is a "public works contract" under Mo. Rev. Stat. § 34.058.

As set forth below, I conclude that the Hankins-Jamison subcontract is not a "public works contract" as defined in Section 34.058 because it represents an agreement between two private entities, so the "no damages for delay" clause in the Hankins-Jamison subcontract is not barred by the Missouri statute.

I.   **Background**

The St. Louis Housing Authority, a municipal corporation,[1] contracted with Hankins to modernize a public housing high-rise building.  Hankins then subcontracted the electrical portion of that work to Jamison.  That subcontract included a clause that Hankins would not be liable to Jamison for damages as a result of delay in the work.  It also provided that Jamison would complete its electrical work "in accordance with . . . [t]he terms and provisions of the Contract" between the Housing Authority and Hankins.  In addition, the subcontract provided that Jamison "herewith assumes toward [Hankins] any and all obligations and responsibilities applicable to [Jamison's] work" that Hankins assumed toward the Housing Authority, insofar as those obligations were represented by certain documents incorporated into the prime contract.  (Subcontract, Section 1, Def.'s Ex. 2, Doc. 39.)

The project did not, apparently, proceed as planned.  Jamison has now brought multiple claims against Hankins and its surety, Fidelity & Deposit Co. of Maryland.  Jamison alleges that Hankins breached its subcontract by disrupting, delaying, and then accelerating Jamison's work and by withholding payment for

---

[1] *See State ex rel. City of St. Louis v. Ryan*, 776 S.W.2d 13, 16 (Mo. banc 1989) (St. Louis Housing Authority is an independent municipal corporation that, under state law, operates as a political subdivision of the state of Missouri).

work completed. Jamison seeks, among other things, damages for delay. Hankins has counterclaimed, alleging that Jamison refused to complete its assigned work and is liable for back charges Hankins might incur from the Housing Authority.

**II.** **Section 34.058 and Section 5 of the Hankins-Jamison Subcontract**

At issue in this dispute is the interpretation of Mo. Rev. Stat. § 34.058. Section 34.058(1) provides:

> As used in this section, the term "public works contract" means a contract of the state, county, city and other political subdivisions of the state, except the Missouri transportation department, for the construction, alteration, repair, or maintenance of any building . . . .

Section 34.058(2) provides:

> Any clause in a public works contract that purports to waive, release, or extinguish the rights of a contractor to recover costs or damages, or obtain an equitable adjustment, for delays in performing such contract, if such delay is caused in whole, or in part, by acts or omissions within the control of the contracting public entity or persons acting on behalf thereof, is against public policy and is void and unenforceable.

The parties appear to agree that the contract between the St. Louis Housing Authority and Hankins was a "public works contract" as defined by Section 34.058. However, they dispute whether that same term – "public works contract" – applies to the subcontract between Hankins and Jamison. If it does, it could call into question the enforceability of Section 5 of the Hankins-Jamison subcontract, a so-called "no damages for delay" clause. That section provides:

> Should the Subcontractor be obstructed or delayed in the prosecution or completion of the work by the act, neglect, delay or default of the Contractor . . . then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost . . . ; but no such allowance shall be made unless a claim therefor shall be presented in writing to the Contract within forty-eight hours of the occurrence of such delay and such extension of time has been approved by the Owner and the Architect or Engineer.

It continues:

> No payment or compensation of any kind shall be made to Subcontractor for damages because of hinderance or delay in the progress of the work from any [cause].

(Subcontract, Section 5, Def.'s Ex. 2, Doc. 39.)

Hankins has moved for partial summary judgment, arguing that the Hankins-Jamison subcontract is not a "public works contract," so that the no-damages-for-delay clause is not barred by Section 34.058.

### III. Summary Judgment Standard

The summary judgment standards are well established. In determining whether to grant a party's motion, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, although the

parties disagree on how certain facts should be interpreted, there are no material facts in dispute.

IV. **Discussion**

A federal district court, when interpreting Missouri law, is "bound by the decisions of the Supreme Court of Missouri." *B.B. v. Cont'l Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir.1993). When the Supreme Court of Missouri has not directly ruled on the issues presented, "a federal court may consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue." *Missouri v. City of Glasgow*, 152 F.3d 802, 805–06 (8th Cir. 1998) (quoting *Cont'l Ins. Co.*, 8 F.3d at 1291). Even though "federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive and should be followed when they are the best evidence of state law." *Baxter Int'l., Inc. v. Morris*, 976 F.2d 1189, 1196 (8th Cir. 1992).

Under Missouri law, the "seminal rule of statutory construction is to ascertain the intent of the legislature from the language used and to consider the words used in their plain and ordinary meaning." *Mo. Beverage Co., Inc. v. Shelton Bros., Inc.*, 669 F.3d 873, 877 (8th Cir. 2012) (quoting *St. Louis Cnty. v.*

*Prestige Travel, Inc.*, 344 S.W.3d 708, 713–14 (Mo. banc 2011)). If a statute's language is clear and unambiguous, a court should "give effect to its plain meaning" and avoid "applying the rules of construction unless there is some ambiguity." *Id.* (quoting *Prestige Travel*, 344 S.W.3d at 714). To determine a term's plain meaning, courts should "consult standard English language dictionaries." *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 638 (Mo. Ct. App. 2001); *see also Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867, 871 (8th Cir. 2008) (looking to Merriam–Webster's Collegiate Dictionary for the ordinary meaning of a statutory term).

In this case, neither the Supreme Court of Missouri nor any Missouri appellate court has considered whether a "public works contract," as defined by Mo. Rev. Stat. § 34.058, includes contracts between a prime contractor and its subcontractors on a public works project. But the statute defines the term as "a contract of the state, county, city and other political subdivisions of the state . . . ." This statutory language is clear: under Section 34.058, only certain contracts "of" a governmental entity are public works contracts. "Of" is employed in a variety of situations, but most relevantly, it is "used as a function word to indicate belonging or a possessive relationship." *Merriam-Webster's Collegiate Dictionary* 804 (10th ed. 2002). Although subcontracts might seem to "belong" to the governmental

– 6 –

entity in an indirect or incidental way – without the entity, no subcontract would exist – reading "of" that broadly would stretch the word beyond its commonsense limitations. Instead, "of" is most naturally read to include only those contracts to which the governmental entity is party. Because the statute unambiguously excludes contracts between two private parties, whether they are working on a public works project or not, no statutory interpretation is necessary.

This reading of the statute comports with *Roy A. Elam Masonry, Inc. v. Fru-Con Construction Corp.*, the only Missouri appellate court decision to discuss the scope of Section 34.058. 922 S.W.2d 783 (Mo. Ct. App. 1996). In that case, two private parties contracted to construct a data center in downtown St. Louis. One of the parties argued that Section 34.058(2), invalidating certain damages-limiting clauses in public works contracts, was evidence that Missouri had a public policy against enforcing a damages-limiting clause in the *Elam* parties' private contract. The Missouri Court of Appeals disagreed, holding that Section 34.058 "applies to public works contracts, not to contracts between private parties." *Id.* at 791. It noted that the clause at issue had been "freely bargained for and agreed to by private parties experienced in this field." *Id.* As such, enforcing the provision was "not against public policy." *Id.*

In its opposition brief, Jamison argues that its subcontract is a public works contract not just because it covered electrical work on a public works project, but because it incorporated terms of the general contract between Hankins and the Housing Authority. I disagree. Even if Jamison had agreed to bound by all the terms of the prime contract, that would not transform the subcontract from private to public or change the nature of its signatories.

Jamison also argues that the Missouri legislature must have intended to include both prime contracts and subcontracts under Section 34.058. It points out that Section 34.058(2) renders unenforceable so-called "no-damages-for-delay" clauses in public works contracts, and that any delays in a public works project would impact both the general contractor and its subcontractors. Jamison believes the legislature could not have intended that "with respect to the exact same delay, some parties would be granted relief and other parties not." (Pl.'s Mem. in Opp., p. 5, Doc. 40.)

First, because the language defining "public works contract" under Section 34.058 is clear and unambiguous, I need not examine the legislative intent behind the statute. Nonetheless, I disagree that the legislature could not have intended this result. Public works prime contracts "differ from other contracts in that they are awarded by competitive bid and not subject to bilateral, arm's-length

negotiations." *Frank Coluccio Const. Co. v. City of Springfield*, 779 S.W.2d 550, 552 (Mo. banc 1989). It is possible the legislature acknowledged this difference by codifying a protection for prime contractors that it chose not to extend to subcontractors.

**V.     Conclusion**

In conclusion, I find that Hankins is entitled to judgment as a matter of law on this issue. Mo. Rev. Stat. § 34.058 unambiguously limits "public works contracts" to contracts entered into by a governmental entity. The subcontract between Hankins and Jamison is not a public works contract because it was agreed to by two private parties, so Section 34.058 does not bar the "no damages for delay" portion of Section 5 of the subcontract.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Hankins Construction Company's motion for partial summary judgment [#37] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of December, 2013.